**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PETER TAYLOR,**

                                                **Petitioner,**

                          **v.**                                    **1:06-CV-1149**
                                                                    **(FJS)**
**UNITED STATES OF AMERICA,**                          **Related Criminal Action**
                                                                    **1:03-CR-298**
                                **Respondent.**
_____

**APPEARANCES**                               **OF COUNSEL**

**PETER TAYLOR**
**11967-052**
F.C.I. Raybrook
P.O. Box 9000
RayBrook, New York 12977
Petitioner _pro se_

**OFFICE OF THE UNITED**                    **PAUL D. SILVER, AUSA**
**STATES ATTORNEY**
218 James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207-2924
Attorneys for Respondent

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND[1]

On July 23, 2003, a grand jury sitting in the Northern District of New York returned a

one-count Indictment against Petitioner Peter Taylor, charging him with possessing with intent to

---

[1] The Court has derived the background information contained in this
Memorandum-Decision and Order from the documents filed in the present civil action, _Taylor v._
_United States_, No. 1:06-CV-1149 ("06-CV-1149"), as well as the documents filed in the related
criminal matter, _United States v. Taylor_, No. 1:03-CR-298 ("03-CR-298").

distribute more than five grams of cocaine base.  *See* 03-CR-298, Dkt. No. 11 ("Indictment").  A Special Information was also filed in this District on that date, which alleged that Petitioner had previously been convicted of a drug felony offense, thereby subjecting him to enhanced penalties for the offense charged in the Indictment.

On October 27, 2003, Petitioner filed a pretrial omnibus motion seeking various forms of relief, including the suppression of his statements to law enforcement personnel, an order prohibiting the prosecutor from introducing into evidence the tangible evidence seized in conjunction with the execution of the search warrant, and the dismissal of the Indictment.  *See* 03-CR-298, Dkt. No. 21.  On November 21, 2003, this Court heard oral argument in support of, and in opposition to, that motion.  Following that proceeding, the Court denied Petitioner's motion to suppress the tangible evidence recovered incident to the execution of the search warrant and scheduled a hearing to resolve the remaining issues that Petitioner had raised in his application.  *See* 03-CR-298, Dkt. No. 24.  On January 22, 2004, this Court presided over that hearing, *see* 03-CR-298, Dkt. No. 29, Transcript of Pre-Trial Hearing dated January 22, 2004; and, on April 5, 2004, this Court issued an Order in which it denied the remaining aspects of Petitioner's motion, *see* 03-CR-298, Dkt. No. 30.

On June 30, 2004, and again on July 14, 2004, a grand jury returned Superseding Indictments against Petitioner.  *See* 03-CR-298, Dkt. Nos. 39, 40.  In the latter of these instruments, the Government charged Petitioner with (1) conspiring to distribute and to possess with the intent to distribute more than 50 grams of cocaine base and more than 10 grams of ecstasy (Count 1); (2) possessing with intent to distribute and distributing crack cocaine (Counts 2 and 4); (3) possessing with the intent to distribute and distributing cocaine (Count 3); (4)

-2-

possessing with the intent to distribute ecstasy, cocaine and crack cocaine (Count 5); (5)

possessing firearms during and in relation to the charge asserted against Petitioner in Count 1

(Count 6); (6) possessing firearms in furtherance of the possession with intent to distribute

charges brought against Petitioner in Count 5 (Count 7); (7) possessing a stolen firearm which

had been transported in interstate commerce (Count 8); and (8) possessing firearms after having

been previously convicted of a felony offense (Count 9). *See* 03-CR-298, Dkt. No. 40 ("Second

Superseding Indictment").

On December 17, 2004, Petitioner filed a second omnibus motion in which he

alleged, among other things, that the Second Superseding Indictment was the result of a

vindictive prosecution and must therefore be dismissed. *See* 03-CR-298, Dkt. No. 44

("December, 2004 Omnibus Motion"). In support of that claim, he argued that the Second

Superseding Indictment resulted from his filing of a notice of his intention to pursue a civil rights

complaint against the City of Hudson Police Department. *See id.* This Court heard arguments

regarding that omnibus motion on January 28, 2005, and on February 28, 2005, issued an Order

in which it denied that motion. *See* 03-CR-298, Dkt. No. 48, Memorandum-Decision and Order

dated February 28, 2005. On July 28, 2005, a grand jury returned a Third Superseding

Indictment against Petitioner which effectuated technical amendments to the Second Superseding

Indictment but which did not assert any additional substantive criminal charges against

Petitioner. *Compare* 03-CR-298, Dkt. No. 40, Second Superseding Indictment, with 03-CR-298,

Dkt. No. 58, Third Superseding Indictment.

On August 9, 2005, after jury selection in Petitioner's trial had begun, the Government

and Petitioner filed a plea agreement with the Court. *See* 03-CR-298, Dkt. No. 64, Plea

Agreement between United States of America and Peter Taylor ("Plea Agreement").  Under the terms of that agreement, Petitioner was to plead guilty to Counts 4 and 7 of the Third Superseding Indictment, which charged him with possession with the intent to distribute more than five grams of cocaine base, and criminal possession of a firearm in furtherance of a drug trafficking offense, in full satisfaction of all charges brought against him in that instrument.

On August 9, 2005, Petitioner appeared before this Court for purposes of entering his guilty plea.  During the course of that proceeding, Petitioner declared that he was "satisfied with the advice and preparation" he had received from his counsel and that he "understood everything contained in this plea agreement."  *See* Transcript of Change of Plea dated August 9, 2005 ("Plea Tr.") at 2-3.  Petitioner's counsel then explained the steps he had undertaken to review the terms of that agreement with Petitioner, *see id.* at 3-4; after which, Assistant United States Attorney Paul D. Silver ("AUSA Silver") summarized the factual basis for the guilty plea, *see id.* at 6-7.  After Petitioner conceded that AUSA Silver's factual recitation was correct, the rights Petitioner would be waiving by his guilty plea were placed on the record, as was the fact that, under the terms of the Plea Agreement, he was explicitly waiving his right to appeal and/or collaterally attack the conviction and any term of imprisonment of 228 months or less.  *See id.* at 7-9.  The Court thereafter accepted his guilty plea.  *See id.* at 10.

In his sentencing memorandum, Petitioner's counsel noted that, although Petitioner had attempted to cooperate with law enforcement personnel, he was unable to accomplish the "substantial assistance" necessary for the Government to move properly for a downward departure in Petitioner's sentence under § 5K1.1 of the United States Sentencing Guidelines ("Guidelines").  *See* 03-CR-298, Dkt. No. 69, Defendant's Sentencing Memorandum

("Sentencing Mem.") at 9 (footnote omitted).[2]

Petitioner appeared before this Court for sentencing on July 5, 2006. *See* 03-CR-298,

Dkt. No. 70. At that proceeding, this Court noted that Petitioner's criminal history category as a

"career offender" was level VI. That fact, combined with his Total Offense Level under the

Guidelines of 35, subjected him to a Guidelines range of imprisonment of 292 to 365 months on

his conviction on Count 4 in the Third Superseding Indictment. *See* Transcript of Sentencing of

Peter Taylor dated July 5, 2006 ("Sentencing Tr.") at 9. This Court determined, however, that it

would be unjust to sentence Petitioner as a "career offender" under the Guidelines and, thereafter,

sentenced him to 120 months on his conviction on Count 4, to be served consecutive to the

mandatory 60-month term to which Petitioner was subject in light of his firearms conviction on

Count 7. *See id.* at 11. Accordingly, the Court sentenced Petitioner to an aggregate term of

imprisonment of 180 months. *See id.*

Petitioner did not file an appeal relating to his conviction or sentence. *See* 06-CV-1149,

Dkt. No. 1 ("Motion to Vacate") at ¶ 9.

On September 25, 2006, Petitioner filed, *pro se*, his Motion to Vacate, Set Aside or

Correct his Sentence pursuant to 28 U.S.C. § 2255. *See* Motion to Vacate. In that application, he

asserted that the Court must set aside his guilty plea because (1) it was the product of the

ineffective assistance of trial counsel; (2) the Government failed to provide Petitioner with all

---

[2] Counsel noted, however, that this Court could nevertheless consider Petitioner's efforts to assist law enforcement agents in determining the sentence the Court would impose on Petitioner. *See* Sentencing Mem. at 9.

*Brady*[3] material to which he was entitled; (3) the guilty plea was unlawfully induced and not

voluntarily made; and (4), at the sentencing hearing, the Government withheld from the Court

information about Petitioner's cooperation with law enforcement agents. *See* Motion to Vacate,

Grounds One through Four.

On January 13, 2009, the Government filed a response in opposition to Petitioner's

application, *see* 06-CV-1149, Dkt. No. 8 ("Respondent's Memorandum"), to which Petitioner

filed a reply memorandum in further support of his application, *see id.*, Dkt. No. 9 ("Reply").


## II. DISCUSSION

### A.   Waiver of right to file a collateral challenge

Respondent initially argues that, with the exception of the ineffective assistance claim,

Petitioner is precluded from raising the claims asserted in his Motion to Vacate in light of the

waiver he executed in his Plea Agreement. *See* Respondent's Memorandum at 7-8.


#### *1. Applicable legal standard*

"It is well established in this Circuit that a knowing and voluntary waiver of the right to

appeal is enforceable." *United States v. Cunningham*, 292 F.3d 115, 117 (2d Cir. 2002) (citing

*United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)); *see DeLeon v. United States*,

Nos. 02 CIV. 9745, 00 CR. 1236, 2003 WL 21769836, *3 (S.D.N.Y. July 30, 2003) (noting that

"[t]he Second Circuit has held that a defendant's waiver of right to appeal a sentence that is

within an agreed-upon Sentencing Guidelines range is enforceable when a 'defendant . . .

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

knowingly and voluntarily enters into a plea agreement containing a waiver of appeal rights and obtains the benefits of such an agreement'" (quoting *United States v. Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998)).

### 2. *Validity of Waiver*

Where the hearing held in conjunction with a plea agreement establishes that the defendant was aware of and voluntarily executed a waiver of his right to file an appeal in conjunction with an otherwise valid guilty plea, such a waiver is enforceable.  *See Cunningham*, 292 F.3d at 117 (citing *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)); *United States v. Jimenez*, Nos. 01 Civ. 7256, 99 CR. 44, 2004 WL 1077956, *1 (S.D.N.Y. May 12, 2004) (citing *Liberato v. United States*, Nos. 99 Cr. 137, 01 Civ. 3056, 2001 WL 930238, at *5 (S.D.N.Y. Aug. 16, 2001)) (other citation omitted).

In his Plea Agreement, Petitioner acknowledged that, although he was aware of his rights to appeal and/or collaterally attack his conviction and sentence, he was nevertheless waiving those rights with respect to his conviction and any sentence of imprisonment he might receive of 228 months or less.  *See* Plea Agreement at ¶ 13 ("Appellate Waiver").  That Appellate Waiver was specifically referenced at his change of plea hearing.  *See* Plea Tr. at 8-9.  Since, as is discussed more fully below, Petitioner's plea was knowingly, intelligently and voluntarily made, his waiver is valid and enforceable.  He is, therefore, precluded from properly asserting in this action claims that do not challenge either the effectiveness of his trial counsel or the validity of

the guilty plea itself.[4]  *See Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195-96

(2d Cir. 2002); *see, e.g.*, *United States v. Hernandez*, 242 F.3d 110, 114 (2d Cir. 2001) (noting

that, where the process by which the plea agreement was secured "passes muster, the plea

agreement's waiver . . . bar[s] any consideration . . . of issues that fall within the scope of that

waiver").

        Thus, the Court finds that Petitioner is precluded from prevailing on his claims that (1)

the Government improperly failed to disclose to the Court the extent of his cooperation prior to

the time at which Petitioner pled guilty (Motion to Vacate, Ground Two);[5] and (2) AUSA Silver

wrongfully withheld information from this Court, at Petitioner's sentencing, regarding the extent

of Petitioner's cooperation (Motion to Vacate, Ground Four).[6]  *See Brown v. Herbert*, 288 F.

Supp. 2d 351, 354 (W.D.N.Y. 2003) (noting that, "[w]hen a criminal defendant has solemnly

admitted in open court that he is in fact guilty of the offense with which he is charged, he may

_____

        [4] In his Reply, Petitioner provided the Court with an excerpt of the Sentencing Transcript
wherein it was stated that Petitioner could file an appeal in the criminal matter.  *See* 06-CV-1149,
Dkt. No. 9-6, Exh. 3 at 3.  To the extent that Petitioner argues that such comment rendered his
appellate waiver invalid, this Court notes that the Second Circuit has squarely rejected such a
notion.  *See United States v. Fisher*, 232 F.3d 301, 304-05 (2d Cir. 2000).

        [5] Petitioner's Motion to Vacate does not clearly indicate the time frame surrounding the
claim he asserts in his second ground for relief.  *See* Motion to Vacate, Ground Two.  However, in
his Reply, Petitioner contends that, at a pretrial hearing that this Court conducted on April 2, 2004,
the Government wrongfully informed this Court that no arrest had been made as a result of the
information that Petitioner had provided to law enforcement agents.  *See* Reply at 2.  Regardless,
because such claim does not challenge the validity of the plea or the effectiveness of counsel in
negotiating that plea, Petitioner's Appellate Waiver bars this claim.

        [6] The Court further notes that the Plea Agreement did not contain any language – and there
was no discussion at the change of plea hearing – about a possible downward departure motion
regarding Petitioner's sentence if he cooperated with the Government.  *See* Plea Agreement; *see also*
Plea Tr.

not thereafter raise independent claims . . . that occurred prior to the entry of the guilty plea"

(citing *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970))); *Fuller*

*v. United States*, No. 08-CV-3950, 2008 WL 4614998, *1 (E.D.N.Y. Oct. 15, 2008) (denying

§ 2255 claim alleging that counsel was ineffective at sentencing; "[a]s this claim relates solely to

Petitioner's counsel's performance at sentencing, he does not bring himself within any of the

exceptions to the rule that a waiver of appellate rights is enforceable" (citation omitted));

*Castellanos v. United States*, Nos. 06 Civ. 7773, 02 CR 1314, 2008 WL 4548916, *5 (S.D.N.Y.

Oct. 8, 2008); *United States v. Cano,* 494 F. Supp. 2d 243, 249 (S.D.N.Y. 2007) (claim of

ineffective assistance of counsel at sentencing "does not survive [petitioner's] appeal waiver").


**B.      Petitioner's ineffective-assistance-of-counsel claim**

Although Petitioner is procedurally barred from raising the above claims due to his valid

waiver, he may nevertheless properly assert a collateral challenge to his conviction and sentence

based upon a claim that they were the product of the ineffective assistance of counsel.  *See*

*Frederick*, 308 F.3d at 195-96; *see also Sharpley v. United States*, 499 F. Supp. 2d 208, 211

(N.D.N.Y. 2007) (holding that, "[r]egardless of Petitioner's waiver, Petitioner is entitled to file a

collateral attack under Section 2255 claiming ineffective assistance of counsel").

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his

defence."  U.S. Const. amend. VI.  Courts have long recognized this right to counsel as one that

entitles a defendant to the right to the effective assistance of counsel.  *See McMahon v.*

*Richardson*, 397 U.S. 759, 771 n.14 (1970) (citations omitted).  Under the now familiar two-part

test that the Supreme Court enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), an

individual who claims he received the ineffective assistance of counsel must demonstrate that the

representation (1) "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at

688, and (2) prejudiced the petitioner, *id.* at 694; *see also Campusano v. United States*, 442 F.3d

770, 773 (2d Cir. 2006) (citations omitted); *United States v. Champion*, 234 F.3d 106, 109 (2d

Cir. 2000) (quotation omitted).

In support of his ineffectiveness claim, Petitioner argues that his trial counsel wrongfully

failed to request a hearing on Petitioner's claim that he was being subjected to a vindictive

prosecution.  *See* Motion to Vacate, Ground 1.  However, in Petitioner's December, 2004

Omnibus Motion, Petitioner's counsel specifically requested a hearing for his application seeking

"an Order dismissing the Superceding Indictment as vindictive prosecution."  *See* Notice of

Pretrial Omnibus Motion dated December 17, 2004.  The Government opposed that application,

*see* 03-CR-298, Dkt. No. 46; and, as noted above, this Court denied Petitioner's request in its

February, 28, 2005 Memorandum-Decision and Order.  In that decision, this Court specifically

observed that,

> during plea negotiations, the Government advised Defendant that,
> in the event that no plea agreement could be reached, it would
> bring more serious charges against him.  There is no suggestion,
> however, that the Government's threat was based on impermissible
> grounds or that it was, in any other way, vindictive.  Therefore, the
> Court finds that there is no evidence that the Government increased
> the charges against Defendant for exercising his procedural rights.

*See* Memorandum-Decision and Order dated February 28, 2005, at 6 (citation omitted).

As noted *supra*, no substantive changes were made to the charges brought against

Petitioner in the Third Superseding Indictment *vis-a-vis* the Second Superseding Indictment.

-10-

Thus, counsel was not ineffective by failing to request another hearing on a vindictive prosecution claim, which plainly would have been barred by the doctrine of law of the case. *See*, *e.g.*, *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (law of the case doctrine provides that, when a court has ruled on an issue, such decision "'should generally be adhered to by that court in subsequent stages in the same case'" (quotation omitted)).  Therefore, Petitioner's current claim that his trial counsel wrongfully failed to request a hearing seeking the dismissal of the charges against him on the theory that they were the product of a vindictive prosecution is patently without merit.

In his Reply, Petitioner also asserts that his counsel rendered ineffective assistance because he did not file an appeal on Petitioner's behalf.  *See* Reply at 3.  In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court discussed the factors that a court must consider in determining whether counsel had a constitutionally-imposed duty to consult with a client about filing an appeal.  In *Roe*, the Court found that such a duty exists where the court concludes "(1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Id.* at 480.  "[A] highly relevant factor" courts are to consider in ascertaining whether counsel had a duty to consult with his client regarding the filing of an appeal is "whether the conviction follow[ed] a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings."  *Id.*  Courts are also to consider "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights."  *Id.*

-11-

As noted above, Petitioner's Appellate Waiver is valid.  That waiver provided that he would not appeal "any sentence of imprisonment of two hundred and twenty-eight months or less."  *See* Plea Agreement at ¶ 13.  This Court sentenced Petitioner to a total term of 180 months' imprisonment.  *See* Sentencing Tr. at 11.  Since (1) Petitioner was convicted following a guilty plea, (2) the Plea Agreement expressly waived all appeal rights with respect to the sentence imposed on Petitioner, and (3) Petitioner received the sentence he bargained for in his Plea Agreement, it was objectively reasonable for counsel to refrain from consulting with Petitioner about filing an appeal on his behalf.[7]  The Court, therefore, denies this aspect of the present application.  *See Dimarco v. United States*, No. 07-CV-1906, 2008 WL 3243871, *6 (E.D.N.Y. Aug. 7, 2008); *United States v. Chen*, Nos. 05 Civ. 3662, 03 Cr. 567, 2005 WL 2877721, *6-*7 (S.D.N.Y. Nov. 3, 2005); *Lopez v. United States*, No. 01-CV-7398, 2002 WL 1471540, *3 (E.D.N.Y. May 15, 2002).

**C.     Validity of guilty plea**

Petitioner also claims that his guilty plea was not knowingly, intelligently and voluntarily made.  *See* Motion to Vacate, Ground Three.[8]  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)

---

[7] Significant by its omission in Petitioner's submissions is any claim that he specifically requested that his attorney file an appeal on his behalf and that his counsel ignored that request.  *See* Motion to Vacate; Reply.

[8] "[A] waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement."  *Frederick*, 308 F.3d at 195 (citations omitted).

(quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)) (other citations omitted); *Parke v. Raley*, 506 U.S. 20, 28-29 (1992) (plea is valid when it is both knowingly and voluntarily made (citations omitted)).

The objective evidence before the Court belies Petitioner's current claim that his guilty plea was unlawfully induced, involuntary or otherwise invalid.  Specifically, the record establishes that Petitioner (1) understood everything contained in the Plea Agreement; (2) entered into the agreement of his own free will; (3) was advised of the numerous rights he was waiving by pleading guilty; and (4) acknowledged the accuracy of AUSA Silver's recitation of the factual basis for the plea, which established Petitioner's guilt of the charges to which he was pleading guilty.  *See* Plea Tr. at 2-8.  Since nothing before this Court suggests that Petitioner's guilty plea was invalid in any way, the Court denies this ground for his Motion to Vacate.

Moreover, to the extent Petitioner claims that he was wrongfully required to dismiss voluntarily a civil action he had commenced in this District in which he alleged that he was entitled to monetary relief arising out of his alleged cooperation with the Government in the related criminal matter, *see* Motion to Vacate, Ground Three, the Court notes that Petitioner has failed to provide this Court with the civil action number of the case he filed in this District to which this claim refers.  *See id.*; *see also* Reply.  Regardless, a review of the Northern District's docket reveals that Petitioner has filed two actions in which he seeks monetary damages arising from his claimed cooperation with law enforcement agents in the underlying criminal action.  *See Taylor v. Dunlap*, No. 07-CV-253 (N.D.N.Y.), Dkt. No. 1;[9] *Taylor v. Thames*, No. 09-CV-72

---

[9] On March 11, 2009, the Court entered judgment in favor of Defendants in *Taylor v. Dunlap*, 07-CV-253, and closed the case.  *See Taylor v. Dunlap*, 07-CV-253, Dkt. No. 56.

-13-

(N.D.N.Y.), Dkt. No. 1.  He is therefore plainly not entitled to the relief he seeks based on his

claim that he was wrongfully compelled to withdraw such a civil action.


D.      **Motion to Amend**

On August 22, 2008, Petitioner filed what appears to be a motion to amend.  *See* 06-CV-

1149, Dkt. No. 6 ("Motion to Amend").  In that application, Petitioner lists three proposed

"issues/grounds" which he apparently seeks to assert in the Motion to Vacate he has filed in this

action.  *See id.*  The first proposed ground argues that in May, 2004, Petitioner provided

information to AUSA Silver which implicated a number of other individuals in the criminal sale

of narcotics and appears to suggest that his sentence should therefore be reduced.  *See id.*, "Issue"

One.  The second proposed ground argues, as Petitioner claims in the second ground already

asserted in his Motion to Vacate, that at an April, 2004 pretrial conference, AUSA Silver

wrongfully advised the Court that Petitioner had not provided information to law enforcement

officials that had resulted in the arrest of any other individuals in the related criminal matter.  *See

id.*, "Issue" Two; *see also* Motion to Vacate, Ground Two.  The final (proposed) ground

contained in the Motion to Amend argues that law enforcement personnel improperly disclosed

to one or more individuals the fact that Petitioner had acted as a "snitch;" and, as a result,

Petitioner has been assaulted by other inmates.  *See* Motion to Amend, "Issue" Three.

"[F]ederal courts must deny proposed amendments to pleadings when it would be futile to

grant the requested amendment."  *Myles v. United States*, Nos. 5:06-CV-0007, 5:03-CR-0243,

2008 WL 5110971, *5 (N.D.N.Y. Dec. 2, 2008) (citations and footnote omitted).  Petitioner

could not prevail on the first two proposed "issues" contained in his Motion to Amend due to his

-14-

valid appellate waiver because neither of these proposed claims allege ineffective assistance of counsel or otherwise call into question the validity of the guilty plea.  Furthermore, the sole remaining proposed claim, even if true, would not entitle Petitioner to a reduction in his sentence. Rather, such a claim is more properly raised in the other civil actions that he has filed in this District in which he seeks monetary relief.  The Court therefore denies Petitioner's Motion to Amend on the grounds of futility.  *E.g.*, *Myles*, 2008 WL 5110971, at *5 (citation omitted).

**E.      Certificate of appealability**

The Court notes that 28 U.S.C. § 2253(c)(l) provides in relevant part that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . (B) the final order in a proceeding under section 2255."[10]  28 U.S.C. § 2253(c)(l).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Since Petitioner has failed to make such a showing, the Court declines to issue any Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998).

**III. CONCLUSION**

After carefully reviewing Petitioner's application, Respondent's opposition thereto, Petitioner's Reply, the documents filed in both this civil action and the related criminal matter, and the applicable law, and for the reasons stated herein, the Court hereby

---

[10] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed. R. App. P. 22(b).

**ORDERS** that Petitioner's Motion to Vacate is **DENIED**; and the Court further

**ORDERS** that Petitioner's Motion to Amend is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in

accordance with the District's Local Rules; and the Court further

**ORDERS** that a Certificate of Appealability shall not be issued in this case.


**IT IS SO ORDERED.**


Dated: March 14, 2009
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge